IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MILES THOMAS,<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRUM, *et al.*,<br><br>Defendants. | Civil No. 25-00125 MWJS-RT<br><br>ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITH LEAVE TO SUPPLEMENT FACTUAL ALLEGATIONS |

### INTRODUCTION

On March 18, 2025, pro se Plaintiff Miles Thomas filed a complaint against Spectrum and Charter Communications. ECF No. 1. Thomas also applied to proceed in forma pauperis (IFP), that is, without prepayment of fees or security. ECF No. 2. In considering such an application, the Court must screen the complaint and, among other things, ensure that it states a claim upon which relief can be granted.

Because Thomas has sufficiently demonstrated an inability to pay court fees, the Court GRANTS his IFP application. In its current form, however, Thomas' complaint fails to state a claim for relief. The Court therefore DISMISSES the complaint, and GRANTS Thomas an opportunity to supplement his factual allegations. Should he choose to do so, he must file a letter by May 5, 2025, that complies with the guidance below.

**DISCUSSION**

    A.    **Thomas' In Forma Pauperis Application**

Under 28 U.S.C. § 1915(a)(1), federal courts may authorize the commencement of suit without prepayment of fees or securities by persons who submit an affidavit demonstrating an inability to pay.  Section 1915(a) does not require an IFP applicant to demonstrate absolute destitution, *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948), but they must "allege poverty with some particularity, definiteness and certainty," *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (cleaned up).  An affidavit is sufficient where it alleges that the applicant "cannot pay the court costs and still afford the necessities of life."  *Id.*

The Court finds that Thomas has shown an inability to pay under § 1915(a).  In the IFP application, Thomas states that his only source of income is public assistance (such as welfare), totaling $894 a month.  ECF No. 2, at PageID.11.  Thomas' monthly expenses, on the other hand, include $1,250[1] for housing, $894 for food, $160 for laundry and dry-cleaning, $180 for transportation, and $575 for "child support."  *Id.* at

---

[1]    Thomas filed several other cases around the same time as this one and listed his housing expenses differently:  in some IFP applications, he listed housing as $12,500.00 or $125.00 rather than $1,250.  *See, e.g.*, *Thomas v. Williams*, No. 25-cv-118 (D. Haw. March 17, 2025), ECF No. 2, at PageID.13 (listing rent as $12,500); *Thomas v. Chock, et al.*, No. 25-cv-129 (D. Haw. March 18, 2025), ECF No. 2, at PageID.14 (listing rent as $125.00).  It appears that Thomas erroneously omitted or added a "0" to his housing costs in some of his IFP applications.  Regardless of which of these numbers is in error, though, Thomas' expenses exceed his income.

PageID.13.  In total, then, Thomas spends $3,059 a month[2] and receives only $894 of income.  Thomas further states that he does not have any assets aside from one savings bond.  *Id.* at PageID.11.  The Court notes that Thomas' annual income of $10,728 ($894 monthly x 12 months = $10,728) falls well below the 2025 poverty guidelines for a one-person household in Hawaiʻi.  *See* Annual Update of the HHS Poverty Guidelines, 90 Fed. Reg. 5917 (Jan. 17, 2025) (listing $17,990 in annual income as the 2025 poverty guideline for a one-person household in Hawaiʻi).

Based on the information Thomas provided, the Court finds that he has demonstrated a current inability to pay court fees while still affording the necessities of life.  The Court therefore GRANTS Thomas' IFP application.

B.     **Screening of Thomas' complaint**

Because Thomas asks to proceed in forma pauperis, the Court must screen the complaint.  *See* 28 U.S.C. § 1915(e)(2).  Thomas is a pro se litigant, and so the Court liberally construes his pleadings.  *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  The Court, though, must still dismiss claims or complaints that are frivolous, malicious, or fail to state a claim for relief.  *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

---

[2]     While Thomas appears to list his total expenses as $2,104, the individual expenses he identifies reach a total expense amount of $3,059.  *See* ECF No. 2, at PageID.13-14.  Regardless of the correct number, Thomas' income is significantly less than his expenses.

Dismissal is required here because Thomas' complaint fails to state a claim upon which relief can be granted. In evaluating whether a complaint fails to state a valid claim for screening purposes, courts generally apply the pleading standards in Rule 8 of the Federal Rules of Civil Procedure. *See Watison*, 668 F.3d at 1112; *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013). Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To show an entitlement to relief, however, it is not enough for a complaint to allege "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Thomas offers few factual allegations to support his legal claims. He states that "since 9/10/2022 my security . . . has not been good at all," and that "[b]ecause of security criminals had access to my phone." ECF No. 1, at PageID.6. Thomas appears to have concluded that Spectrum "let[] people spy on me thro[ugh] my phone" and "put[] my life in danger with my phone shutting down." *Id.* at PageID.7. He further alleges that he has experienced "to[o] much fraud by Hawaii Spectrum," including a Spectrum "employee's double charges on internet service, [and a] Hacked account." *Id* at PageID.6. He seeks "50 million dollars" to compensate him for his injuries. *Id.*

From this conduct, Thomas' complaint appears to assert claims under various federal statutes, and he thus appears to invoke this Court's federal question jurisdiction.

4

*Id.* at PageID.9.  In particular, Thomas cites to the Electronic Communications Privacy Act (ECPA) and the Stored Communications Act (SCA).  *Id.*[3]  But the complaint fails to state a claim for relief because it does not allege sufficient facts to show that Spectrum's alleged actions violated these statutes.

The ECPA "addresses various areas of electronic surveillance including wire taps, tracking devices, stored wire and electronic communications, transactional records, pen registers, and trap and trace devices."  *United States v. Espudo*, 954 F. Supp. 2d 1029, 1032 (S.D. Cal. 2013).  Title II of the ECPA is the SCA, which "governs requests for access to stored records, including historical cell site data."  *United States v. Cooper*, No. 13-CR-00693, 2015 WL 881578, at *4 (N.D. Cal. Mar. 2, 2015).  It creates "civil liability for certain unauthorized access to stored communications and records."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012).  Under the SCA, there is a "private right of action against anyone who '(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system."  *Id.* (quoting 18 U.S.C. § 2701(a)).  An "electronic

---

[3]  Thomas also references the "FAA" and the "FTC," presumably referring to the Federal Aviation Administration and the Federal Trade Commission, respectively.  ECF No. 1, at PageID.9.  But citing to federal government agencies, rather than federal law, does not provide a basis for a cause of action.

communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  But these prohibitions "do not apply 'to conduct authorized (1) by the person or entity providing a wire or electronic communications service; [or] (2) by a user of that service with respect to a communication of or intended for that user.'"  *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057 (alteration in original) (quoting 18 U.S.C. § 2701(c)).

Other than citing the SCA, Thomas' complaint does not identify the particular provisions of the ECPA under which he is suing, nor does it provide sufficient factual detail to support any such statutory claim.  *See Booth v. Williams Coll.*, No. 220CV00265, 2020 WL 3288404, at *2 n.1 (E.D. Cal. June 18, 2020) ("While the court liberally construes the allegations in plaintiff's pro se complaint, it will not forage through federal statutes looking for claims that aren't presented to it.").  The complaint does not, for example, allege what the communication was, or where it was stored.  And it does not explain who "accessed" the communication, or whether the person who did so was unauthorized to do so.  Instead, the complaint simply states that Thomas' account was hacked—but it does not provide details of when that happened, what information was breached, or how that breach might result in Spectrum's liability under the SCA or other provisions of the ECPA.

Thomas also checked the box next to "Other Civil Rights" as a basis for the nature of the suit.  ECF No. 1, at PageID.9.  But, again, his general allegations that he

6

has suffered some sort of privacy invasion are not sufficient to state a claim under any federal law without factual details that explain what violation of privacy he suffered, or how it was committed.

Similarly, Thomas lists several tort theories, including "[n]egligent security," "[n]egligent [i]nfliction of [e]motional [d]istress," "[n]egligent [h]iring and supervision," "[p]roduct liability," and "[p]ain and suffering." *Id.* at PageID.6. But beyond the scant factual allegations recited above, he does not elaborate on any details supporting these claims. He does not, for example, allege how he was affected emotionally from any alleged security breach or overcharging of fees. Nor does he allege any specific Spectrum product defect. Thomas also does not explain where, when, and in what amount the alleged Spectrum employee "double charge[d]" him for his internet services. *Id.* Thomas' complaint therefore fails to state a claim on any of these ancillary bases for relief.

For these reasons, Thomas' complaint on all claims is DISMISSED.

### C.   Leave to Amend the Complaint

Although the Court dismisses the complaint, it recognizes that Thomas is proceeding pro se and he could possibly cure the deficiencies. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (explaining that leave to amend should be considered, even in the face of "frivolous factual allegations," if it appears the allegations "could be remedied through more specific pleading"). But because Thomas' factual allegations are so

sparse, the Court defers decision, at this time, on the question of whether Thomas should be granted leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (denial of leave to amend appropriate where amendment is futile).

Instead, the Court offers Thomas an opportunity to explain how he would supplement his factual allegations if leave to amend were granted. If Thomas wishes to continue pursuing this action, he must, by May 5, 2025, submit a letter further detailing the factual allegations which support his claims. Thomas is cautioned that he may not expand his claims beyond those already alleged or add new claims; if he does so, he must explain how those new claims relate to those he has raised in this complaint. In any such letter, Thomas must expand on his legal allegations to specify which provisions of the ECPA and/or SCA he is relying on. And he must supplement his factual allegations to explain what the basis for protection under these statutes is. Specifically, he should detail what electronic information or communication was disclosed, and to whom. With regard to any of his tort claims, he should further detail (1) the action that Spectrum or its employees took, (2) what happened as a result of those actions, and (3) how he was affected by those actions.

Thomas is further cautioned that failing to timely file a letter that addresses the identified deficiencies will result in the automatic dismissal of this action.

### D.     Motion to Appoint Counsel

Thomas also filed a Motion for Appointment of Pro Bono Counsel.  ECF No. 6.  Generally, a civil litigant does not have a right to counsel.  *See Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  But pursuant to 28 U.S.C. § 1915(e)(1), the court may appoint counsel for indigent civil litigants.  *See id.*  In making this determination, the Court must consider whether "exceptional circumstances" exist.  *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).  To make a finding of "exceptional circumstances," the Court must evaluate "the likelihood of the plaintiff's success on the merits" and "the plaintiff's ability to articulate his claims in light of the complexity of the legal issues involved."  *Id.* (cleaned up).  And courts have explained that "[d]ifficulties that any litigant proceeding pro se would face do not indicate exceptional factors."  *Hopkins v. Rsch. Corp. of Univ. of Hawaii*, No. CV 19-00054, 2019 WL 1292290, at *2 (D. Haw. Mar. 20, 2019) (cleaned up).

Here, Thomas states that he "called multiple lawyers and they denied my right to affective [sic] counsel," and that he is an "Army Veteran that deserves justice and no law firm will help."  ECF No. 6, at PageID.21.  But under the governing standard for appointing counsel, these facts do not amount to "exceptional circumstances," particularly because the claims raised in Thomas' initial complaint are not unusually complex.

In addition, the Court notes that, at this point, it is too early to assess the likelihood that Thomas' claims would succeed on the merits, given the above deficiencies noted in his complaint. Thomas' Motion for Appointment of Counsel is therefore DENIED without prejudice to Thomas filing another request after the Court has decided whether he can sufficiently cure the complaint's defects.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the in forma pauperis application and DISMISSES the complaint without prejudice as to all claims. It also DENIES his motion to appoint counsel without prejudice.

If Thomas elects to file a letter supplementing his factual allegations, he must comply with the following requirements:

(1)  The deadline to file any such letter is May 5, 2025; and

(2)  Any such letter must allege with specific factual detail the basis for any claims and cure the deficiencies identified above.

Failure to timely file a letter that conforms with this Order will result in the automatic dismissal of this action.

//
//
//
//

IT IS SO ORDERED.

DATED: April 4, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 25-00125 MWJS-RT; *Miles Thomas v. Spectrum, et al.*; ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITH LEAVE TO SUPPLEMENT FACTUAL ALLEGATIONS

11